IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: )<br>)<br>REMBRANDT TECHNOLOGIES, LP )<br>PATENT LITIGATION )<br>) | MDL Docket No. 07-1848-GMS-LPS |

## MEMORANDUM ORDER

1. In response to a subpoena from certain defendants (the "AOPs") in the instant multi-district litigation, non-party Zhone/Paradyne (hereinafter "Zhone") entered into an agreement with the AOPs governing Zhone's production of documents (hereinafter the "Agreement").

2. Pursuant to the Agreement, the AOPs "agree[d] that Zhone's providing access to the boxes [containing potentially responsive documents] does not constitute a waiver of any privilege."

3. The AOPs further "agree[d] not to identify for copying during their inspection any material that they [the AOPs] believe to be privileged."

4. The Agreement also provided that the AOPs "expressly reserve all rights and remedies regarding the Zhone/Paradyne documents and nothing herein shall be deemed as a waiver of any such rights or remedies." Moreover, the AOPs retained the right to "challenge any claim of privilege asserted by Zhone under any basis allowed by law."

5. The Agreement provided rights and remedies to Zhone as well. First: "Zhone may, if it elects, review boxes before making them available for inspection to [the AOPs] in

order to attempt to identify privileged information." Second, Zhone was to be provided a copy of all materials identified for copying by the AOPs' attorneys. Third, "In the event that, upon review of the copied material, Zhone identifies material it believes to be privileged, upon Zhone's assertion of privilege, [the AOPs] will promptly sequester . . . all copies . . . of the material and any notes made from the material at issue."

6. Pursuant to the Agreement, attorneys for the AOPs reviewed Zhone documents and obtained copies of approximately 500,000 pages of such documents. The AOPs received their copies of these documents between August and November 2008.

7. Other documents presently in the possession of the AOPs are documents that were produced by the plaintiff, Rembrandt, and have also been referred to by Rembrandt in responses to interrogatories.

8. In or about February 2009, days before deposition discovery was set to begin, Rembrandt and Zhone notified the AOPs that hundreds of documents that had been produced pursuant to the Agreement, and/or that had been referred to by Rembrandt in interrogatory responses, were privileged and inadvertently produced. Rembrandt and Zhone sought to remove these documents from the instant litigation.

9. In response, the AOPs have sequestered the documents identified by Rembrandt and Zhone and have not used them in several recent depositions. The AOPs now seek an order permitting them to use these documents in the instant litigation.

10. As the parties asserting attorney-client privilege, the burden is on Rembrandt and Zhone to establish that the documents at issue are privileged. *See In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990). The burden of showing that any privilege has been

waived rests with the AOPs. *See In re Impounded*, 241 F.3d 308, 317 (3d Cir. 2001).

11. Having carefully considered the letters filed by the parties,[1] as well as the argument of counsel during a telephonic hearing held this same day, I find that, even assuming the documents at issue are protected by attorney-client privilege, such privilege has been waived. Zhone's response to what was evidently a substantially burdensome subpoena from the AOPs was to negotiate a procedure for providing responsive documents expeditiously, while minimizing the costs to itself, while also hoping to preserve any privilege. It decided to enter into the Agreement. Other courses of action were available (including seeking a protective order or moving to quash the subpoena if the request was unduly burdensome). No doubt there were certain benefits and certain costs for Zhone in choosing to enter into the Agreement. One evident cost was the risk that the AOPs might come into possession of documents that Zhone (or Rembrandt) believes are privileged.

12. The Agreement provided Zhone mechanisms for reducing the risk of inadvertent disclosure of privileged documents. Zhone had the right to "review boxes before making them available for inspection to [the AOPs] in order to attempt to identify privileged information." Then, after the AOPs' inspection of the boxes, Zhone had a right to obtain a copy of all documents taken by the AOPs, to review those documents and, if privileged, demand their

---

[1] The letters are docketed at D.I. 587, 612, 613, and 614. All but the first of these were filed in response to my scheduling order of February 26, 2009. (D.I. 595) My order provided that "Rembrandt and/or Zhone/Paradyne may file a three-page letter or letters" and then "[t]he AOPs may file a two-page reply letter." *Id.* (emphasis added). After Rembrandt and Zhone filed separate three-page letters, the AOPs filed a three-page letter, suggesting that I had not contemplated that Rembrandt and Zhone would file a total of six pages. To the contrary, the Order plainly contemplated that Rembrandt and Zhone might each file three-page letters. The AOPs should have adhered to the page limit set out in the Order or sought leave to exceed the page limit.

sequester and return. Zhone chose not to engage in a thorough review of its boxes for privilege prior to giving the AOPs access to them. Thereafter, Zhone chose not to obtain copies of all of the documents the AOPs marked for copying. And Zhone waited many months, until February 2009 – almost on the eve of depositions – to begin review of the documents taken by the AOPs.

13. In the context of an already extraordinarily expensive, massive, multi-district, multi-party, multi-patent infringement action, I find that Zhone did not act with sufficient diligence to protect any privilege that may have attached to any of the documents taken by the AOPs (or those identified by Rembrandt in its responses to interrogatories).[2] After bargaining for the right to review its own boxes for privilege and subsequently to review for privilege copies of whatever the AOPs took, Zhone chose not to undertake such a review until just before the AOPs were set to use some of these documents in depositions. After expressly permitting the AOPs to make their own determinations as to what Zhone documents were privileged – prohibiting the AOPs from copying only those materials that the <u>AOPs</u> believed to be privileged – Zhone chose not to scrutinize the judgment calls the AOPs inevitably made in their inspection of Zhone's boxes until many months had passed and depositions were imminent. Zhone should have discovered this problem sooner. *See Zapata v. IBP, Inc.*, 175 F.R.D. 574, 577 (D. Kan. 1997) ("The relevant time for rectifying any error begins when a party discovered <u>or with reasonable diligence should have discovered</u> the inadvertent disclosure.") (emphasis added) (cited by

---

[2] *See, e.g., Abbott Labs. v. Alpha Therapeutic Corp.*, 2000 WL 1863543, at *5 (N.D. Ill. Dec. 14, 2000) ("We are unimpressed that Alpha [the producing party] chose not to begin review of its documents until six months after the document request. It only makes matters worse that the review was conducted on site at the time of the production. Although this was a questionable effort, it became worse when Alpha failed to review the documents Abbott [the requesting party] selected for copying. This case clearly supports a finding that Alpha waived the attorney-client privilege as to the documents at issue.").

Rembrandt in D.I. 613 at 3).

14. The record before me does not support a finding of bad faith on anyone's part. I do not fault Zhone for entering into the Agreement and certainly do not wish my ruling to discourage parties from attempting to work out resolutions to discovery disputes. But I do find that, in the circumstances presented here, Zhone proceeded in a manner – most especially after entering into the Agreement – that entailed a substantial risk that the AOPs would end up being able to use privileged Zhone documents in the instant litigation.

Accordingly, IT IS HEREBY ORDERED THAT the AOPs' request to retain and use for purposes of the instant litigation documents that are in the AOPs' possession, having been produced to the AOPs by Rembrandt and/or Zhone, is GRANTED. The AOPs are not required to sequester, destroy, return, or otherwise refrain from making use of in the instant litigation any of the documents sought to be "clawed back" by Rembrandt and/or Zhone.

Delaware counsel are reminded of their obligations to inform out-of-state counsel of this Order. To avoid the imposition of sanctions, counsel shall advise the Court immediately of any problems regarding compliance with this Order.

March 6, 2009
Wilmington, Delaware

UNITED STATES MAGISTRATE JUDGE